

Signed and Filed: February 26, 2016

_____
THOMAS E. CARLSON U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>WILLIAM M. HAWKINS and<br>LISA WARNES-HAWKINS,<br><br>                Debtors.<br>_____<br>WILLIAM M. HAWKINS, III, aka Trip Hawkins; LISA WARNES-HAWKINS,<br><br>                Plaintiffs,<br><br>v.<br><br>THE FRANCHISE TAX BOARD; UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE,<br><br>                Defendants.<br>_____ | Bankruptcy Case<br>No. 06-30815-TEC<br><br>Chapter 11<br><br><br><br><br>Adversary Proceeding<br>No. 07-3139-TEC |

**SUPPLEMENTAL FINDINGS OF FACT UPON REMAND**

A. <u>Willful Attempt to Evade or Defeat Tax</u>

    This court previously entered a judgment determining that income tax liabilities of Debtor William M. Hawkins, III ("Hawkins") were excepted from his bankruptcy discharge under section 523(a)(1)(C) of the Bankruptcy Code after finding Hawkins had "willfully attempted in any manner to evade or defeat such tax." *Hawkins v. Franchise Tax Board*, 430 B.R. 225 (Bankr. N.D. Cal. 2010) ("*Hawkins I*").

There being no Ninth Circuit decision defining the elements that the government must prove to establish this exception to discharge, this court adopted the following test specified by the Eleventh Circuit:

> Section 523(a)(1)(C) "contains a conduct requirement (that the debtor 'attempted in any manner to evade or defeat [a] tax'), and a mental state requirement (that the attempt was done 'willfully')." "The government satisfies the conduct requirement when it proves the debtor engaged in affirmative acts to avoid payment or collection of taxes," either through commission or culpable omission. The mental state requirement – willfulness – is satisfied where the government shows that the debtor's attempt to avoid tax liability was "done voluntarily, consciously or knowingly, and intentionally." That standard is met where "(1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty."

*U.S. v. Jacobs*, 490 F.3d 913, 921 (11th Cir. 2007) (citations omitted).

I determined that Hawkins' tax liabilities were excepted from discharge under the *Jacobs* standard, because Hawkins dissipated his assets by maintaining an extravagant lifestyle, while not paying a known tax liability, while he knew he was insolvent, and after he had decided to file bankruptcy. *Hawkins I*, 430 B.R. at 235-39.

Hawkins timely appealed.

The Ninth Circuit held that this court applied the wrong legal standard in determining whether Hawkins willfully attempted to evade or defeat taxes. The Ninth Circuit held the Government must prove that Hawkins acted with the specific intent to evade or defeat taxes.

> [W]e conclude that declaring a tax debt non-dischargeable under 11 U.S.C. § 523(a)(1)(C) on the basis that the debtor "willfully attempted in any manner to evade or defeat such tax" requires a showing of specific intent to evade the tax.

-2-

> Therefore, a mere showing of spending in excess of income is not sufficient to establish the required intent to evade tax; the government must establish that the debtor took the actions with the specific intent of evading taxes.

*Hawkins v. Franchise Tax Board*, 769 F.3d 662, 669 (9th Cir. 2014)("*Hawkins II*"). The Ninth Circuit remanded the case to allow me to determine whether Hawkins' tax liabilities should be excepted from discharge under the proper legal test. *Id*. at 670.

**Upon due consideration, and after re-examining the trial record, the court hereby issues the following supplemental findings of fact regarding the specific-intent issue.**

Hawkins did not act with the specific intent to evade or defeat tax in engaging in the spending pattern described in this court's prior decision. Hawkins engaged in that spending to further the comfort and welfare of his family, not with the conscious objective of frustrating the collection of tax. Nor did Hawkins engage in that spending with the subjective knowledge that his spending was substantially certain to cause harm to the Government. Hawkins' excessive spending consisted largely of making mortgage and property tax payments on two very expensive homes that he kept for his own use. By reserving more than one residence for his own use, Hawkins consumed rental value that could have been used to pay his creditors. But the evidence does not support a finding that Hawkins was substantially certain that creditors would be harmed by this conduct. During the years in question, real estate was appreciating so quickly that one cannot say that Hawkins knew he could get a greater return by liquidating the real estate. One also cannot say with sufficient certainty that Hawkins knew that the aggregate recovery following the

-3-

eventual sale of the real estate would have been greater had the property been rented pending sale. Renting high-end residential property entails at least some risk that the tenant will cause damage that reduces the selling price by more than the rent received.

Hawkins did not act with the specific intent to evade or defeat tax in his conduct regarding: (a) the family court proceeding; (b) the offer in compromise; (c) the investments in 3DO; (d) the private jet; and (e) the San Francisco Giants tickets. In my prior decision, I found no evidence of intent to evade or defeat tax in any of those acts. *Hawkins I*, 430 B.R. at 240-42. I now reaffirm those findings.

Hawkins did not act with the specific intent to evade or defeat tax in claiming tax losses though the FLIP and OPIS transactions. For the reasons set forth in Part B below, I find that Hawkins subjectively believed that he could properly claim the capital losses created through the FLIP and OPIS transactions.

B. <u>Fraudulent Return</u>

The Government had also urged at trial that Hawkins' tax liabilities should be excepted from discharge under section 523(a)(1)(C), because Hawkins "made a fraudulent return" for each of the years in question. The Government acknowledged that to establish Hawkins' returns as fraudulent, it had to prove the following three elements: (1) a knowing falsehood; (2) intent to evade tax; and (3) underpayment of tax. *Considine v. United States*, 645 F.2d 925, 929 (Ct. Cl. 1981).

At the end of the trial, I stated orally upon the record that I was inclined to find that the Government had not proved that

-4-

Hawkins made a knowing falsehood in any of the returns. Trial transcript at pages 496-99. In my written decision, however, I expressly declined to resolve the fraudulent-return issue, because I had already determined that the tax liabilities in question should be excepted from discharge on other grounds. *Hawkins I*, 430 B.R. at 233.

Because I now determine that Hawkins' tax liabilities may not be excepted from discharge on those other grounds, I now must also determine whether Hawkins "made a fraudulent return" for any of the years in question.

**Upon due consideration, and after careful review of the trial transcript, of the 1997-2000 tax returns, and of the opinion letters and other exhibits pertaining to the FLIP and OPIS transactions, I now make the following supplemental findings of fact regarding the fraudulent-return issue**.

The most plausible basis for finding that Hawkins made a knowing falsehood in any of the tax returns in question was that those returns incorporated altered brokerage account statements. Paine Webber brokerage account statements attached to the returns purported to show the prices at which Hawkins had purchased UBS shares. It was from the sale of the UBS shares that Hawkins claimed the multi-million-dollar losses that were disallowed by the Government. The purchase price for the shares shown on the brokerage statements was not the price Hawkins actually paid for those shares, but the much larger transferred tax basis that Hawkins had been told by his tax advisors that he was entitled to claim through the FLIP and OPIS transactions. The Government contends that the brokerage statements were altered for the

-5-

purpose of hiding the fact that the losses were claimed pursuant to a dubious basis-shift tax shelter.

The evidence indicates that Hawkins did not alter the brokerage statements attached to his returns or know that those statements had been altered. Hawkins' tax returns were prepared by Dave Kenyon. Mr. Kenyon asked Duncan Naylor, Mr. Hawkins' broker at Paine Webber, to alter the brokerage statements to show as the "purchase price" for the UBS shares, the transferred tax basis ($3,796 per share), rather than the amount Hawkins actually paid for each share ($220 per share). See Exhibit 48. Schedule D of Hawkins' tax returns incorporated the "purchase price" shown on the altered brokerage statements as the "cost or other basis" for the UBS shares. Mr. Kenyon discussed each tax return with Hawkins, and described in general terms how each return incorporated the FLIP and OPIS transactions, but there is no evidence that Kenyon pointed out the altered brokerage statements, or that Hawkins noticed the altered brokerage statements. I find that Hawkins signed each tax return without knowing that the attached brokerage statements misstated the purchase price for the UBS shares.

Nor did Hawkins sign the return in question knowing that those returns claimed losses not permissible under applicable law. Hawkins signed the 1997-2000 tax returns knowing that those returns claimed large capital losses related to the FLIP and OPIS transactions. Hawkins received opinion letters from highly qualified tax professionals concluding that it was more likely than not that the basis transfer involved in FLIP and OPIS would be recognized as proper by the IRS. As I explained at pages 496-

Case: 07-03139    Doc# 99    Filed: 02/26/16    Entered: 02/26/16 13:56:21    Page 6 of 7

99 of the trial transcript, the flaws in those opinion letters were not apparent to anyone other than a tax lawyer or tax accountant. I find that Hawkins subjectively believed that he was legally entitled to claim the FLIP and OPIS related capital losses shown on his 1997-2000 returns, and that Hawkins did not commit a knowing falsehood in filing returns claiming those losses.

Hawkins filed his 2000 tax return after he received an audit notice from the IRS challenging the validity of the UBS related capital losses in his 1997 return. Prior receipt of this notice did not render Hawkins' 2000 return fraudulent. While the audit notice charged Hawkins with knowledge that the IRS considered the UBS related losses to invalid, that notice simultaneously shows that Hawkins was not concealing anything from the IRS in continuing to claim such losses, and that Hawkins was thus not acting with the intent to evade tax in claiming UBS related losses in his 2000 return.

I find that Hawkins did not file fraudulent tax returns for any of the years from 1997 through 2000.

**END OF SUPPLEMENTAL FINDINGS OF FACT UPON REMAND**